IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTOR WATKINS, | |
| Plaintiff, | No. 19-cv-06615 |
| v. | Judge John F. Kness |
| CITY OF CHICAGO and STATE OF ILLINOIS, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Victor Watkins sued the City of Chicago and the State of Illinois under federal civil rights law for alleged violations of "his unfettered right to petition the court for redress of grievances." According to Plaintiff, after he announced his intent to file a petition for habeas corpus, "unknown" officers surveilled Plaintiff at several temporary residences, berated him in retaliation, and hacked his social media profiles in violation of Plaintiff's civil rights. In response, the City of Chicago has moved to dismiss the complaint on the ground that the *Monell* doctrine bars vicarious liability claims against a municipal entity under § 1983 and, in the alternative, that Plaintiff fails to state an underlying constitutional violation.

As explained more fully below, Plaintiff fails to state a § 1983 claim against a municipal entity under either a theory of respondeat superior or *Monell*. Accordingly, the City's motion to dismiss is granted. Because Plaintiff's complaint also fails to state a claim against the State of Illinois (which has not appeared in this matter), the Court

must also dismiss all claims against the State in accordance with its 28 U.S.C. § 1915 screening obligation.

I. **BACKGROUND**

Plaintiff Victor Watkins brings this action against the City of Chicago and the State of Illinois based on alleged civil rights violations. (*See* First Amended Complaint ("FAC"), Dkt. 40.) Plaintiff alleges that Chicago Police Department ("CPD") officers and Illinois State Police ("ISP") officers acted together to "deprive[] Plaintiff of his unfettered right to petition" the Northern District of Illinois for "redress of grievances." (*Id.* ¶¶ 13, 17, 21.)

Plaintiff was convicted of burglary in October 2013 and sentenced to 12 years in prison. (*Id.* ¶ 7.) After Plaintiff was paroled on April 3, 2019, Plaintiff initiated a grievance against the CPD officers involved in his 2013 arrest with the City's civilian police oversight board, and he informed "them that he intended to file a petition for habeas corpus" challenging the validity of his state burglary conviction. (*Id.* ¶ 7.) On April 30, 2019, Plaintiff filed a petition for a writ of habeas corpus; that petition is currently pending before another judge in this District. (*Id.* ¶ 8); *see Watkins v. Baldwin*, No. 19-cv-02878 (N.D. Ill filed on Apr. 30, 2019).

According to Plaintiff's complaint in the present suit, "[s]ince Plaintiff announced his intent to file a petition for habeas corpus," he was subjected to a variety of civil rights violations at the hands of "unknown" CPD and ISP officers between April 2019 and July 2020:

- On April 12, 2019, "unknown CPD officers surveilled Plaintiff [] and conducted a warrantless search" of his hotel room in Chicago.

2

- On April 30, 2019, "unknown CPD officers followed Plaintiff to [church]" and requested that Church employees cease providing work-related transportation aid to Plaintiff. After this visit, the services "immediately ended."

- On November 2, 2019, "unknown CPD officers surveilled Plaintiff" and "conducted a warrantless search" of another hotel room in Chicago where Plaintiff was temporarily residing.

- In December 2019 and July 2020, and potentially on additional occasions, Plaintiff's Facebook account was hacked. "Plaintiff believes that the hacking was done by unknown CPD officers."

- In December 2019 and March 2020, CPD plainclothes officers "berated" Plaintiff for successfully filing his habeas petition and "warned him that he would be returned to prison[.]"

- Between April 29 and May 2, 2020, ISP officers surveilled the "home of the biological mother of Plaintiff's child" in Rockford, Illinois, as well as hotel room at which Plaintiff was residing at the time.

- Finally, Plaintiff "is advised and believes that in May 2020, CPD officers told known gang members in [] Chicago, Illinois, that Plaintiff was a 'snitch.'"

(*Id.* ¶ 9.)

Based on the foregoing, Plaintiff sued the City and the State[1] for violating "his unfettered right to petition the court for redress of grievances" under 42 U.S.C. § 1983 (Count I); conspiring to deprive Plaintiff of the same right under 42 U.S.C. § 1985 (Count II); and "fail[ing] to take action to prevent or expose said conspiracy" under 42 U.S.C. § 1986 (Count III). (*Id.* ¶¶ 12-23). Plaintiff claims that Defendants are "responsible for the actions of [their] employees while acting within the scope of their employment, including officers employed at [CPD and ISP]." (*Id.* ¶¶ 5, 6.) But

---

[1] Plaintiff named the City of Chicago and the State of Illinois as Defendants. (*See* FAC.) To date, only the City has appeared, and the City alone filed the present motion to dismiss.

3

Plaintiff does not name any individual ISP or CPD officers as defendants in this case, nor any "unknown ISP/CPD officers" as placeholders in the caption. (*See id.* ¶¶ 4-6.) Instead, Plaintiff seeks to hold only the governmental entities liable for the actions of their employees. (*Id.* ¶¶ 14, 18, 22.)

On Plaintiff's application, the Court granted Plaintiff leave to proceed *in forma pauperis*. (Dkt. 8.) The City filed a motion to dismiss the complaint in its entirety for failing to state a claim. (Dkt. 45.) For the reasons that follow, the City's motion is granted and Plaintiff's complaint is dismissed without prejudice.

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678-79.

### III. DISCUSSION

For the following reasons, Plaintiff fails to state a claim against the State and the City. In performing the screening obligations inherent in any *in forma pauperis* case, the Court must dismiss the claims against the State because § 1983 does not alter the sovereign immunities of the State, and the State has not otherwise consented to suit. The Court also dismisses the complaint against the City because, even viewed in the light most favorable to Plaintiff, the complaint fails to state sufficiently a *Monell* claim under any identifiable theory of liability.

#### A. **Plaintiff cannot proceed against the State of Illinois**

Courts must screen complaints where plaintiffs proceed *in forma pauperis* and must dismiss those they determine are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief against defendants who are

5

immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). To determine if a complaint passes muster under § 1915, the Court applies the same standard as it would to a motion to dismiss under 12(b)(6). *Cf. Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (addressing similar screening obligation under 28 U.S.C. § 1915A). Plaintiff names both the State and the City as Defendants. Although the City has not appeared in this case, the Court must review the claims against the State in accordance with its § 1915 screening obligation.

Sovereign immunity is "the privilege of the sovereign not to be sued without its consent and is secured to the states by the Eleventh Amendment." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021) (internal quotations omitted). State sovereign immunity is a jurisdictional bar to suit. *Id.* As such, to maintain an action against a state, Plaintiff must establish that "Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so" or that the state "has properly waived its sovereign immunity and consented to suit in federal court." *MCI Telecomms. Corp. v. Ill. Com. Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999) (internal citations omitted).

Plaintiff filed his complaint against the State under §§ 1983, 1985, and 1986 of Title 42, but none of those statutes waives a state's sovereign immunity. Indeed, the Supreme Court has explained that § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" and does not otherwise alter a state's sovereign immunities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 67 n.7 (1989). Congress likewise has not waived

sovereign immunity for states under §§ 1985 and 1986. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 641 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Moreover, the State has not waived its sovereign immunity for such claims. *See MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 338 (7th Cir. 2000) (There must be an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment" and courts "indulge every reasonable presumption against a state's waiver of its immunity." (cleaned up)). Because Plaintiff fails to cite to authority showing that the State of Illinois has waived its sovereign immunity and consented to suit in federal court, the Eleventh Amendment bars Plaintiff from proceeding against the State of Illinois in this case. *See Valcq.*, 16 F.4th at 520. All claims asserted against the State in this action are dismissed.

### B. **Plaintiff fails to state a claim against the City of Chicago**

Plaintiff alleges that the City is liable for the actions of the "unknown" CPD officers because the City is "responsible for the actions of its employees while acting within the scope of their employment . . . ." (FAC ¶ 5.) The City argues that Plaintiff's attempt to hold it liable under a theory of respondeat superior liability runs afoul of *Monell*. (Dkt. 45 at 3.) In his response, Plaintiff broadens the basis for his suit by arguing that the City is also liable under *Monell* for "the failure of command staff [] to take action to put an end to the scheme [of alleged harassment, which] constitutes the sort of 'deliberate indifference' upon which liability might be found." (Dkt. 47 ¶ 3.) But, as the City argues, to state a claim under *Monell*, Plaintiff must sufficiently

"link" his alleged constitutional injuries to an action of a City official or widespread practice of the City. (Dkt. 48 at 3.) Plaintiff has not done so. Accordingly, Plaintiff fails to state a claim against the City under either a theory of vicarious liability or *Monell*.

1. Plaintiff fails to state a plausible claim of vicarious liability

To the extent that Plaintiff attempts to hold the City liable for the alleged constitutional violations of its employees under a theory of vicarious liability, such attempts fail as a matter of law. In *Monell v. Department of Social Services of New York*, the Supreme Court held that "municipalities and other local government units [are] included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). At the same time, however, "*Monell* rejected the common-law theory of respondeat superior liability for an employee's actions." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). It is thus well-established that "a municipality cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 690-91).

Plaintiff alleges that the City is liable for the misconduct of unknown CPD officers because "the unknown CPD [] officers were at all relevant times acting within the scope of their employment." (FAC ¶¶ 14, 18, 22). But that allegation simply restates the elements of a vicarious liability claim against the City for the constitutional torts committed by its employees, which *Monell* expressly prohibits. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it

employs a tortfeasor."). Because the City cannot be held vicariously liable for constitutional torts committed by its employees, Plaintiff's claims against the City under a theory of respondeat superior fails as a matter of law.[2]

### 2. Plaintiff fails to state a plausible claim under *Monell*

In his response brief, Plaintiff raises for the first time a more capacious legal theory of liability against the City: Plaintiff argues that the City is liable because his alleged constitutional violations were part of "an ongoing scheme of harassment." (Dkt. 47 ¶ 2.) Plaintiff invites the Court to "infer that, at a minimum, knowledge of the scheme goes fairly high up the chain of command" at the CPD. (*Id*. ¶ 3.) Plaintiff also "submits that the failure of command staff at [the CPD], with knowledge of the scheme, to take action to put an end to the scheme constitutes . . . 'deliberate indifference.' " (*Id.*) It appears Plaintiff seeks to construct a claim under *Monell*, despite not specifically citing that case or any of its progeny. Although courts need only look to matters within the four corners of the complaint in deciding a motion to dismiss, *see Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013), the Court will nonetheless address Plaintiff's *Monell* theory of liability.

Under *Monell*, a local government can be a proper § 1983 defendant only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

---

[2] Because vicarious liability against a municipality is unavailable to a § 1983 plaintiff, such a plaintiff must attempt to identify the individuals responsible. *See Prate v. Vill. of Downers Grove*, No. 11-cv-3656, 2011 WL 5374100, at *6 n.3 (N.D. Ill. Nov. 7, 2011) ("Plaintiff must specifically name each individual officer as a party Defendant against whom he alleges his § 1983 claims . . . .").

injury." *Monell*, 436 U.S. at 694. As such, the Court must "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices" attributable to the municipality itself. *Howell,* 987 F.3d at 654. To state a valid *Monell* claim, Plaintiff must plausibly allege that the violation of his constitutional rights was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) a policy or decision by an official with final policymaking authority. *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (citing *Monell*, 436 U.S. at 690-91). A plaintiff may also take an "alternative path to *Monell* liability" by plausibly alleging that the need for more or different training is "so obvious" that the municipality's failure to act reflects deliberate indifference and permits an inference of institutional culpability. *J.K.J. v. Polk-County.*, 960 F.3d 367, 380 (7th Cir. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

That said, the Supreme Court has made clear that "federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000). As the Seventh Circuit has explained, a "conclusory" *Monell* claim will survive a motion to dismiss when it is "sufficient to put the [local governing body] on notice of [the plaintiff's] claim against it" and if the plaintiff gives the defendant "notice of the crux of the plaintiff's charges" and does not "[leave] out facts necessary to give the defendants a complete understanding of the claims made against them." *Id.* at 325; *see Howard v. Sheriff of Cook Cty.*, No. 15 C 9384, 2016 WL 4366598, at *3 (N.D.

10

Ill. Aug. 16, 2016). To withstand a motion to dismiss on a *Monell* claim, Plaintiff must "plead factual content that allows the court to draw the reasonable inference that the local governing body maintained a policy, custom, or practice, or a lack thereof that caused the constitutional violations alleged." *Howard*, 2016 WL 4366598, at *3 (cleaned up).

Plaintiff does not allege his constitutional rights were violated by an express government policy or a decision by an official with final policymaking authority. (Dkt. 47 ¶¶ 2-3; *see generally* FAC.) Instead, Plaintiff highlights the "repeated" and "ongoing" harassment at the hands of unknown officers from both CPD and ISP—the "breadth" of which, Plaintiff argues, leads to the reasonable inference that City officials knew of the "scheme" and failed to stop it. (Dkt. 47 ¶¶ 2-3.) Drawing all reasonable inferences in Plaintiff's favor and taking the complaint's allegations as true, Plaintiff appears to be relying on a theory of liability, if any, based on the City's widespread practice or failure to train. (*See* Dkt. 40). The Court addresses each theory in turn.

          a.    "Widespread Practice"

To prevail under the "widespread practice" theory of *Monell* liability, Plaintiff must allege that there is a true municipal practice at issue, not a series of disparate events. *Howell,* 987 F.3d at 654 (internal citations omitted). Although a plaintiff need not provide examples of "every other or even one other individual" who similarly suffered as a result of the alleged municipal practice, *see White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), he must "plausibly allege that such examples exist" to

11

sufficiently plead a widespread practice. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). A plaintiff must also allege causation between the alleged practice and his injuries, meaning that the policy or custom was the "moving force" behind the constitutional violation. *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Alleged misbehavior by one or a group of officials is relevant only where "it can be tied to the policy, customs, or practices of the institution as a whole." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

Despite the low pleading standard for § 1983 municipal liability claims, *see McCormick*, 230 F.3d at 323, Plaintiff fails sufficiently to allege the existence of a widespread municipal practice. Plaintiff neither attempts outright to define any parameters of a widespread City practice nor provides any allegations of similar harassment faced by others to support an inference that such a practice exists (or existed). (Dkt. 47 ¶¶ 2-3; *see generally* FAC.)

Other judges in this District have rejected widespread practice claims under *Monell* even when the plaintiff provides far greater evidence than Plaintiff does here. *See, e.g.*, *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 793 (N.D. Ill. 2013) ("five [similar cases] over a period of more than twenty years are insufficient to create municipal liability for a 'widespread practice' "); *Carmona v. City of Chicago*, No. 15-CV-462, 2018 WL 306664, at *3 (N.D. Ill. Jan. 5, 2018) (submission of U.S. Department of Justice report on use-of-force cases cannot establish widespread practice of the precise handcuffing alleged); *Henderson v. McCarthy*, No. 14-cv-09905,

12

2016 WL 6135706, at *4 (N.D. Ill. Oct. 20, 2016) (allegations that police officers were previously reprimanded for similar conduct do not establish a widespread practice).

Indeed, the only allegations of harassment are Plaintiff's varied personal experiences. Plaintiff claims that the harassment began after he "announced his intent" to file his habeas petition (FAC ¶ 9), and the harassment was "retaliat[ion]" for the same (Dkt. 47 ¶ 5). To that end, Plaintiff alleges that the CPD officers "surveilled," "accosted," and "berated" him "for filing his habeas corpus petition. . . ." (FAC ¶ 9.) But Plaintiff alleges that such conduct happened only to him. Plaintiff's isolated experiences—as troubling as they may be—cannot establish a widespread practice. *See Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 842 (N.D. Ill. 2020) (finding no widespread practice when only the plaintiffs' experiences were alleged); *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. 2016) (same).

Even under the Seventh Circuit's generous pleading standard at the motion to dismiss stage, Plaintiff's strained allegations of a widespread practice fail "to put the [City] on notice of [Plaintiff's] claim against it." *McCormick*, 230 F.3d at 325.

### b. "Deliberate Indifference"

In his response, Plaintiff proposes—again, for the first time—another variety of municipal liability, namely, that "failure of command staff [within CPD and ISP], with knowledge of the scheme, to take action to put an end to the scheme constitutes the sort of 'deliberate indifference' upon which liability might be found." (Dkt. 47 ¶ 3.) But this "deliberate indifference" avenue under *Monell* is likewise unsuccessful.

13

It is true that municipal *in*action, if properly pleaded, can establish a *Monell* claim. In some instances, a city's sustained "policy of inaction, in light of notice that its [practices] will cause constitutional violations[,] is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (cleaned up). Unlike an affirmative practice, however, a failure to intervene "could be inadvertent, and the connection between inaction and a resulting injury is more tenuous." *J.K.J.*, 960 F.3d at 378. As a result, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Bryan Cty v. Brown*, 520 U.S. 397, 405 (1997)).

The Supreme Court has "made plain" that a failure to act "amounts to municipal action for *Monell* purposes only if the [municipality] has notice that its program will cause constitutional violations." *Id.* at 379 (citing *Connick*, 563 U.S. at 61-62 (2011)). And "notice requires proof of a prior pattern of similar constitutional violations." *Id.* at 380. Although "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability," there "must be more than one instance. . . ." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 302 (7th Cir. 2010) (citations omitted).

Plaintiff's attempt to hold the City liable for its failure to take action to put an end to the scheme allegedly perpetrated by "unknown CPD officers" is unsuccessful for the same reasons Plaintiff's complaint fails under the more lenient pleading standards for its alleged widespread practices. Plaintiff does not allege that the City

14

has an express policy or widespread practice of ignoring or disregarding harassment by its officers. (*See generally* FAC.) Nor does Plaintiff cite any examples of other similarly situated individuals that experienced a comparable pattern of tortious behavior to allege such a practice indirectly. (*Id.*) Having alleged facts pertaining only to his own experiences, Plaintiff cannot plausibly state a claim against the City for maintaining a policy of "deliberate indifference."[3] *See Jones v. Feinerman*, 2011 WL 4501405, at *6 (N.D. Ill. 2011). Plaintiff fails, therefore, to allege a viable deliberate indifference claim under *Monell*.

\*     \*     \*

Taking Plaintiff's allegations as true, and drawing all reasonable inferences in his favor, no viable *Monell* claim can be discerned from the complaint as it now stands. Because Plaintiff cannot establish a § 1983 claim against the City, the Court need not address the alleged constitutional violations by "unknown" CPD officers. Accordingly, Plaintiff fails to state a claim against the City.

## IV.   CONCLUSION

For the foregoing reasons, the City's motion to dismiss (Dkt. 45) is granted, and the claims against the State are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) for seeking relief against a defendant that is immune from such relief. These dismissals are without prejudice. If Plaintiff believes he can remedy the deficiencies identified in this order, he may, on or before April 27, 2022, file a second amended complaint. If

---

[3] Although it is possible to allege deliberate indifference under a failure-to-train theory, *see City of Canton v. Harris*, 489 U.S. 378, 389-92 (1989), such a theory of liability is improper when a plaintiff does allege that "the defendants improperly hired, trained, or supervised" their employees—as is the case here, *Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003).

no amended pleading is filed by that date, the dismissals outlined in this order will automatically convert to dismissals with prejudice.

SO ORDERED in No. 19-cv-06615.

Date: March 30, 2022

_____
JOHN F. KNESS
United States District Judge